THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ ERNESTO PARDO TORO, Defendant and Appellant.

No. CR-63-247.      Decided June 16, 1964.

*Eudaldo Báez García* for appellant. *Rodolfo Cruz Contreras, Acting Solicitor General,* and *J. F. Rodríguez Rivera, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Defendant-appellant was convicted by a jury of the offense of involuntary manslaughter committed while operating a motor vehicle. He was sentenced to serve two years' imprisonment in jail. He assigns three errors which we shall mention and discuss below.

In the first he alleges that the Superior Court erred in rendering judgment of conviction against defendant because the jury's verdict was contrary to the evidence, since the only cause of the victim's death was her own negligence.

The prosecution evidence consisted of the testimony of the following six witnesses: Elsa Zaragoza Miranda who, after reading the record, we presume is an adult; Ana María Báez, aged 22; Domingo Madera, aged 76; Juan Pagán Iserni, aged 75; Sergio Díaz Cardona, a policeman; Martín Ramos Berrocal, the victim's father; and the report of the autopsy which was stipulated by the parties. The defense evidence consisted of the testimony of Evangelista Vargas and defendant himself.

The prosecution evidence showed the following. On March 2, 1962, around 7:30 p.m., defendant was operating a motor vehicle of those known as "jeeps" along a street of Sabana Grande, Puerto Rico. He was doing it in violation of the law, since he did not have a driver's license, properly speaking, but rather a learner's permit, and the law requires that every person who drives with a learner's permit "shall be obligated to have seated immediately next to him . . . a person duly authorized to operate such type of vehicle." The law further provides: "The person sitting next to the learner shall furthermore be in such physical and mental condition as to enable him to act or instruct such learner and take over the vehicle, if necessary." Act No. 141 of July 20, 1960, 9 L.P.R.A. § 655(d). Defendant was alone.

When defendant reached a certain place on the street he found that to his left there was a parked wagon of a type which is used to sell ice cream through the streets, with lighted bulbs and other ornaments used in that business to attract the children. There was a group of about 10 or 12 children there and some adults buying ice cream. The street was described as narrow. Defendant proceeded on his way. At that moment the girl, Miriam Ramos Martínez, six years

of age, came out from behind the wagon with an ice cream in her hands. The automobile driven by defendant hit the girl, hurling her at a distance of about 12 feet. The girl suffered bruises and wounds on the face and fracture of the skull. She died the next day.

There are three conflicts in the evidence. The first is whether the car was traveling slowly or fast. Of the eight witnesses who testified, including defendant, six were eyewitnesses. The other two, policeman Díaz Cardona and Evangelista Vargas, were not at the scene of the occurrence. The first person who testified, Elsa Zaragoza Miranda, said that she was on the porch of her house looking out for her children who were buying ice cream in the wagon, and described the occurrence as follows:

"Well, while I was standing watching the children, because I was always in the habit of doing that, a jeep was coming fast, I got scared and saw to it that they would not cross. When they were already coming along the front sidewalk in order to cross in front of my house, I heard the screams, I looked, and saw the mother, Ana Luisa Martínez, picking up a little girl." Tr. Ev. 27.

Ana María Báez testified that she was at the door of her house. She saw when the jeep hit the girl and hurled her at about 12 feet distant. Domingo Madera testified that the jeep was coming "slowly." Juan Pagán Iserni, who was on the porch of his house, testified that the jeep was coming "Fast. Very fast." Martín Ramos Berrocal said that the car was traveling at about 35 or 40 miles per hour. Defendant testified that he was traveling at about 10 or 12 miles per hour.

The second conflict in the evidence is whether the girl came out walking or running from behind the wagon. Witness Zaragoza does not shed any light on this point because she was looking out for her children, since, she said, she got scared when she saw the jeep coming fast and only witnessed the accident when the victim was already on the ground. Ana María Báez testified that the little girl came out running

with the ice cream in her hands. Domingo Madera testified that the girl "walked slowly." Pagán Iserni does not make this point clear. He testified that the girl "went to buy an ice cream, bought it and turned back; as she started, the jeep came suddenly and hit her." Ramos Berrocal, the girl's father, testified as follows:

". . . Then I gave her twenty cents to buy an ice cream and another for my little son. Then I stayed behind the wagon where she was. She bought ice cream. Then she started to go back. I was there holding her. Then she walked a little fast. The jeep was traveling at about 35 or 40 miles."

Defendant Pardo, in describing the occurrence, testified "all of a sudden I felt or saw that the little girl hit the fender in front of the jeep. I could not stop right away. I stopped a little farther ahead. Let us say about 5 or 6 feet." Later, upon further questioning by the defense, defendant testified, "She came out rapidly because I did not have time to stop suddenly. I imagine that she must have come out running."

The third conflict in the evidence is whether defendant stopped at the scene of the accident or proceeded on his way. Elsa Zaragoza, Ana María Báez, Domingo Madera, Juan Pagán Iserni, and Martín Berrocal, all of whom were eye-witnesses with the exception of defendant, testified that the jeep did not stop but kept on. Defendant testified that he stopped, but that they insulted him by word of mouth, that he was afraid they would attack him, and decided to proceed to police headquarters.

There is no dispute that defendant, apparently because he was not familiar with the streets of Sabana Grande since he was from Lajas, drove the car through a blind alley, abandoned it, and then proceeded on foot to police headquarters.

In our opinion, the first error was not committed. The conflicts in the evidence were settled by the jury on whom it was incumbent to do so, and from the record it appears

that there is basis to sustain the verdict. *People* v. *Pinto Medina, ante,* p. 570; *People* v. *Rivera Antuna,* 88 P.R.R. 611 (1963); *People* v. *López,* 77 P.R.R. 573, 576 (1954); *People* v. *Rodríguez,* 70 P.R.R. 21, 24 (1949). Even conceding that the girl came out fast or running in order to cross the street, that was not the only cause of her death. In the first place, we must assume that if learner Pardo had been accompanied, as required by law, by a driver duly authorized to operate motor vehicles, the latter would have advised him to reduce the speed and to take special care, since there was a group of children there. As is known, in cases involving children, the driver of a vehicle should observe greater care than in cases of adults. *Berenguer López* v. *Govt. Employees Ins. Co., ante,* p. 467; *Rodríguez* v. *Franqui,* 86 P.R.R. 727 (1962); *Freytes* v. *Municipality,* 80 P.R.R. 505 (1958); *Álvarez* v. *Hernández,* 74 P.R.R. 460 (1953); *Figueroa* v. *Picó,* 69 P.R.R. 372 (1948).

In the second place, in addition to the fact that defendant was not authorized to drive alone, without the help of a qualified operator, the evidence believed by the jury was to the effect that the driver was traveling at a speed greater than that permitted by law in the urban zone and without regulating the speed of the vehicle, bearing in mind the circumstances therein present. The Vehicle and Traffic Law provides on the matter:

"(a) The speed of a motor vehicle shall be regulated with due care, taking into account the width, volume of traffic, use, and condition of the highway. No person shall drive a vehicle at a speed greater than that which would enable him to have proper control of the vehicle, and to slow down or stop whenever necessary to avoid an accident.

"(b) It shall be unlawful to drive a vehicle at a speed greater than:

"(1) twenty-five (25) miles an hour in the urban zone." 9 L.P.R.A. § 841 (a) and (b) (1).

The Act, *supra*, also provides that:

"(a) Every person driving a vehicle upon a public highway shall be under obligation:

".      .      .      .      .      .      .

"(3) To take all precautions not to run over pedestrians. These precautions shall be taken *even though the pedestrian is incorrectly or unlawfully using the public highway.* The use of the horn shall not relieve the driver of criminal liability when such use is not accompanied by other safety measures." 9 L.P.R.A. § 1102. (Italics ours.)

■ Since the only cause of the girl's death was not her possible negligence, the latter does not relieve the defendant, *People* v. *Pinto Medina, supra; People* v. *Ortiz,* 86 P.R.R. 431 (1962); *People* v. *Andino,* 78 P.R.R. 744, 749 (1955); *People* v. *Guadalupe,* 62 P.R.R. 251, 253 (1943); *People* v. *Francis,* 19 P.R.R. 659, 665 (1913).

The second and third errors are closely related and, after copying them, we shall discuss them jointly.

"2. The Superior Court of Puerto Rico, Mayagüez Part, committed error of fact and of law in substituting, because of his failure to appear, the attorney of record for defendant and in designating an attorney who was not prepared to make an adequate defense, because he was not familiar with the case, without first ascertaining whether the attorney of record had not appeared through the fault or negligence of defendant, or if he had not appeared for reasons outside defendant's will.

"3. The Superior Court of Puerto Rico, Mayagüez Part, committed error of fact and of law in not setting aside the judgment of conviction rendered and in refusing to grant a new trial to defendant upon establishing, when the motion for new trial was argued, that defendant had not had adequate legal assistance."

The point raised by appellant in these two errors is, substantially, whether or not defendant had due legal assistance. Let us examine the facts on this point.

The facts occurred on March 2, 1962. He was arraigned on May 4 of that year. That day defendant appeared person-

ally and represented by the public defender of the Mayagüez Part of the Superior Court, Luis H. Rivera Torres. Mr. Rivera Torres informed the court that defendant would be represented by Mr. Yamil Galib, but that he (Rivera Torres) would represent him at the arraignment. At the request of the defense, the arraignment was considered read, since the offense involved in the case was a misdemeanor, and defendant through his attorney pleaded not guilty and moved for a trial by jury.

The trial was held three months and 19 days after the occurrence and 31 days after the arraignment, namely June 20, 1962. When the case was called for trial, which was the first in the morning of that day, the marshal informed the court:

"Your Honor, Mr. Yamil Galib has not appeared today. He appeared yesterday for the purpose of conferring with Your Honor to explain the situation. He explained it to me in order that I in turn would explain it to you, that he is confined in Concepción Hospital in San Germán. He was given a pass yesterday in order to come to Mayagüez, but he was compelled to go back today; and he *also informed me that he is not the attorney for this defendant.*" Tr. Ev. 3-4. (Italics ours.)

The judge asked who had represented defendant at the arraignment and he was informed that it was Mr. Luis H. Rivera Torres. The judge asked defendant if he had paid fees to Mr. Yamil Galib and defendant answered that he had not. Thereupon the judge designated Mr. Luis H. Rivera Torres attorney for defendant, and told him that he was going to give him time to prepare the case before entering into trial. The judge ended by saying: "*The court will adjourn until the defense announces that he is ready to commence trial.*" Tr. Ev. 5. (Italics ours.)

After a recess of one and a half hours the marshal announced that the session would be resumed. The judge stated for the record that it was 10:35 a.m. when the case was called

anew and that Mr. Rivera Torres was present, to whom he asked: "Have you conferred with defendant?" To this the attorney answered the following:

"Yes, Your Honor. Although we were designated attorney by the court this morning, we have conferred with defendant and are ready for trial." Tr. Ev. 6.

After that statement of the defense the case continued. After the verdict, with defendant's acquiescence, the court set June 25, 1962 for passing sentence. Defendant appeared that day personally and represented by two attorneys, Luis H. Rivera Torres and Eudaldo Báez García. The former announced that the latter would represent defendant. Mr. Báez García requested a term of two weeks to file a motion for a new trial.

The motion for new trial was filed on July 30, 1962. He alleged the following two grounds: (A) That new evidence had been discovered that was favorable to defendant, and (B) because the court had erred in refusing continuance of the trial.

The first ground of the motion for a new trial, as stated above, consisted in that new evidence had been discovered. In order that this ground be acceptable, it is necessary that the new evidence could not have been discovered prior to the trial, notwithstanding having exercised the most reasonable activity. Defendant testified that at the time of the accident he saw Jorge Efraín Pérez and Salvador Luchetti on the street. The court was of the opinion that if defendant had displayed reasonable activity he could have brought that evidence to trial which, we have seen, was held three and one-half months after the day of the occurrence. The motion for new trial is addressed to the discretion of the trial court, and its action will not be disturbed on appeal unless a clear and unmistakable abuse of such discretion is shown, *People v. Morales*, 66 P.R.R. 9 (1946). We have reiterated that a mo-

tion for a new trial based on newly discovered evidence is addressed to the court's discretion, *People* v. *Aponte*, 77 P.R.R. 870 (1955). We do not believe that the trial court committed a clear and unequivocal abuse of discretion and we shall not disturb its action on the matter.

■ The second ground of the motion for a new trial (that the court refused to grant a continuance) is clearly without merit. When the court designated Mr. Rivera Torres to assume the accused's defense, it announced that it would recess until the defense would announce that it was ready to commence trial. Tr. Ev. 5. When the hearing was resumed, one and one-half hours later, the defense attorney announced that he was ready for trial. Tr. Ev. 6. At no time did he move for a continuance and at no time was it denied.

Let us examine further the contention on due assistance of counsel. The hearing and discussion of the motion for a new trial was held on September 28, 1962. Defendant appeared represented by Mr. Báez García. The district attorney and the defense having announced that they were ready, the court asked if there was evidence. The defense announced that he had the defendant himself, attorney Luis H. Rivera Torres, and two sworn statements. The district attorney announced that he would attach to the record the stenographic record of the trial. The first one to testify was Mr. Rivera Torres. He said that he was head of the Office of Legal Assistance in Mayagüez; that he represented the defendant at the arraignment; that the defendant then told him that his attorney would be Mr. Yamil Galib; that he did not see the defendant again until the day of the trial when the court instructed him to assume the defense of the accused. When he was asked how long it took him to confer with defendant, his answer was evasive and he ended by saying that he did not remember. When he was confronted with the stenographic record he answered, "I was called to court to assume the defense of the accused. We were granted time and

it appears on the record. I do not know how long it was."
Tr. Ev. 6. Afterwards he admitted that the time was that
which appeared on the record. When he was asked by the
defense if he was ready for trial (the day of the hearing) he
answered:

"A. Well, as to that, I thought I could be ready to assume
the defense of the accused, on that preparation so . . . but actu-
ally I knew that because of the nature of the case I needed much
more preparation.

Q. In other words, shall I understand that you thought you
were ready, but that you realized that you needed much more
preparation?

A. Yes, sir. At least, you see, according to one's experience
as attorney, one actually feels more or less ready for the cases,
and I, under the circumstances, spoke with defendant. That wit-
ness was summoned; in fact, I did not know what he was going
to say here, but the trial had already commenced. I conferred
with that witness during recess. Perhaps that was at 2 p.m. It
was then that I called him to the witness stand: at 2 p.m., and
testified." Tr. Ev. 11.

When he was asked whether he had moved for a continu-
ance of the case the day of the hearing, Mr. Rivera Torres
answered that he did not recall. When he was shown the
record, he answered: "That is the situation: that I did not
move for a continuance." The following dialogue between the
district attorney and witness, Mr. Rivera Torres, appears
further on:

"Q. When the court asked you if you were ready, did you
feel that you were morally and professionally prepared to com-
mence trial?

A. Well, but I at that moment . . . .

Q. Yes or no . . . If when the court asked you whether
you were ready for trial, you felt that you were morally and
professionally prepared to commence trial?

A. I would say no.

Q. Do you then mean to say now that you deceived the court
when the court asked you that same question on June 20?

A. I did not deceive the court.

Q. Let us see what the court says. . . . The court asked you on June 20, at 10:35 a.m., the following: . . . .

THE JUDGE: Let it be entered in the record that the case was called at 9 a.m., when the session was opened, because it was the only case that day.

DISTRICT ATTORNEY: 'The court sets forth, for the record, that when this case is resumed, the clock of the courtroom marks 10:35 a.m. Colleague Luis H. Rivera Torres, whom the court has designated attorney for this case, is present. Have you conferred with the defendant?—Yes, sir. Although I was appointed attorney by the court this morning, we have conferred with defendant and are ready for trial.'

A. Exactly.

Q. When you said on that occasion, June 20, that you were ready, did you deceive the court?

A. I did not deceive. I work without deceiving the court.

Q. I ask you now . . . you say that you did not deceive the court . . . I ask you now whether or not you were ready.

A. Well, I was ready, but under the circumstances of this case . . .

Q. In other words, that after you had studied the case on the basis of what defendant informed you, you thought that under the circumstances you were prepared to commence trial, that is, that the case was not one involving complications, questions of law which needed more time?

A. It did not involve questions of law, rather of fact than anything else.

Q. And on the basis of the questions of fact which defendant informed you in detail, as to how the accident happened, you felt that you did not need more time to prepare yourself?

A. That is correct as to the case, under the circumstances of the case."

Further on he testified that he had not conferred with the prosecution witnesses because he thought he did not need to. He was asked whether the district attorney placed at his disposal the witnesses whom he waived, and he answered that he was not sure he could remember, but that he thought that it had been that way. He testified that he knew the jury well

because he went to court almost every day; that defendant had told him that he had not paid fees to Mr. Yamil Galib.

Defendant then testified. He said that he saw Mr. Yamil Galib several times; that the latter told him that he would charge him $500; that he (the defendant) would pay Mr. Galib $300 in advance and "the remainder at the end." Tr. Ev. 36. He testified that he did not pay the attorney "because counsellor told him that it was better not to pay him now." That he asked Mr. Luis H. Rivera Torres to postpone the case because his attorney had told him that he would not take the case, Tr. Ev. 44 and 47; that he had procured two witnesses, one named Efraín Pérez, known as "Campeoncito," and the other, Salvador Luchetti. The district attorney pointed out the coincidence that of the two new witnesses, one was working with a relative of defendant, and the other one was the son of a friend since defendant's childhood.

The sworn statement of Salvador Luchetti recites, briefly, that he is a resident of Lajas; that the night of the occurrence he was with his friend Jorge Efraín Pérez on a wagon belonging to the latter at the place of the accident; that as the jeep operated by defendant drew near, a woman who was on the opposite sidewalk called a little girl who came out running and hit the jeep; that defendant stopped and got out of the car, but that they wanted to attack him and then he proceeded. The statement of Jorge Efraín Pérez is, essentially, almost identical with that of Salvador Luchetti. Luchetti said that he is assistant mason, and Efraín Pérez testified that he was the owner of an old wagon, in bad condition, painted red, partly faded and having a wooden body, and that he lived between San Germán and Lajas. Both sworn statements are well drafted, are very accurate, and are almost identical in the essential facts.

■ As to the second and third errors, we may say that we have read carefully the two pieces of the transcript of

evidence, the first of which consists of 140 pages and the second of 78 pages, and they reveal that although defendant was not defended by Mr. Galib, he had sufficient legal defense. Notwithstanding the dubious attitude of Mr. Luis H. Rivera Torres on the witness stand at the hearing of the motion for a new trial, the fact is that he was diligent in the defense of the accused the day the case was heard on the merits. He questioned the gentlemen of the jury, made a challenge, took active part during the prosecution, made the cross-examination diligently, stated the defense theory, and made his closing argument at the end of the trial. Although we have held and do hold that the right to assistance of counsel includes the right to reasonable time to enable the attorney to confer with defendant and to prepare himself for trial, yet this right cannot be used to hinder the normal prosecution of cases when the same is not diligently exercised. What is reasonable time depends on the circumstances of each particular case, since it is clear that the different cases vary in the degree of simplicity or complexity of each. *People* v. *Rodríguez Correa*, 88 P.R.R. 635 (1963) ; *Flores* v. *Warden*, 79 P.R.R. 476, 479 (1956) ; *People* v. *Pedrosa*, 63 P.R.R. 218 (1944).

■ The right to assistance of counsel does not mean the right to assistance of a particular counsel but of an attorney admitted to practice before the courts, of the free choice of defendant when this is feasible, and in default thereof, of a public defender or of one designated by the court and who in the particular case makes a bona fide rather than a merely pro forma defense. We believe that this was done in this case. Appellant himself, in paragraph 3(B)10 of his motion for a new trial, expressly sets forth that Mr. Luis H. Rivera Torres did his best. In *People* v. *Torres*, 81 P.R.R. 659, 665 (1950), the efficiency of the defense made by a public defender was challenged, and there we said:

". . . In any event, it is a well-settled rule in our case law that the mistakes or errors of defendant's counsel (whether the

latter be a public defender, an attorney designated by the court or an attorney which has been chosen and paid by the defendant himself) cannot be invoked on appeal as a ground for obtaining a reversal of the decision or judgment, in absence of malice, fraud, physical or mental disability or of clear, inexcusable and grave professional incompetence on the part of the attorney who represented the appellant at the trial."

See, also, Note, *"Incompetent Counsel as Ground for New Trial in Criminal Cases,"* 47 Colum. L. Rev. 115–22; Note, *"Incompetency of Counsel as a Ground for Attacking Criminal Convictions in California and Federal Courts,"* 4 U.C.L.A. L. Rev. 400–19 (1955), and cases therein cited.

In *Pérez* v. *Delgado, Warden*, 83 P.R.R. 334, 335 (1961), the situation was similar to the case at bar. The attorney designated for defendant did not appear at the trial and the court appointed a defense attorney for defendant. Before the opening of the trial, the court advised that they had all the time necessary to prepare the defense. There we stated that "on repeated occasions we have held, in cases involving similar facts, that the right to assistance of counsel has not been impaired." See, also, *Hernández* v. *Delgado, Warden*, 82 P.R.R. 474 (1961). It must be recalled that in the case at bar the judge stated that the court would adjourn "until the defense announces that he is ready for trial." Tr. Ev. 5. See, also, *Romero* v. *Warden*, 78 P.R.R. 544, 549 (1955), and *Serrano* v. *Warden*, 80 P.R.R. 215 (1958). A defendant cannot appear for trial three and one-half months after the day of the occurrence and 31 days after arraignment, without engaging an attorney, obtain for that reason a free attorney designated by the court, who makes a diligent and adequate defense, and then move for a new trial alleging that he has not had assistance of counsel. As stated by the defense attorney himself, Rivera Torres, this case did not involve questions of law but rather of fact. The defense attorney went to trial when he thought that he was ready; and

after hearing all the evidence it was incumbent on the jury to pass on the innocence or guilt of defendant. It did so unanimously. The second and third errors were not committed either.

For the reasons stated in this opinion, the judgment appealed from will be affirmed.